## UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THOMAS F.P. | : | |
| | : | |
| plaintiff, | : | |
| | : | |
| v. | : | CASE NO. 3:22-cv-01519 (RAR) |
| | : | |
| KILOLO KIJAKAZI, | : | |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY, | : | |
| | : | |
| defendant. | : | |

## <u>RULING ON PLAINTIFF'S MOTION TO REVERSE AND/OR REMAND AND</u>

## <u>DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER</u>

Thomas P. ("plaintiff") appeals the final decision of the Commissioner of Social Security ("the Commissioner") pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) and 1383(c)(3). The Commissioner denied plaintiff's application for Social Security Disability Benefits in a decision dated

December 20, 2021.  Plaintiff timely appealed to this Court.

Currently pending are plaintiff's motion for an order reversing

or remanding his case for a hearing (dkt. 17) and defendant's

motion to affirm the decision of the Commissioner (dkt. 21).

For the following reasons, plaintiff's motion to reverse,

or in the alternative, remand is GRANTED and the Commissioner's

motion to affirm is DENIED.

**STANDARD**

"A district court reviewing a final . . . decision [of the

Commissioner of Social Security] pursuant to section 205(g) of

the Social Security Act, 42 U.S.C. § 405(g), is performing an

appellate function."  Zambrana v. Califano, 651 F.2d 842 (2d

Cir. 1981).  "The findings of the Commissioner of Social

Security as to any fact, if supported by substantial evidence,

[are] conclusive . . . ."  42 U.S.C. § 405(g).  Accordingly, the

court may not make a *de novo* determination of whether a

plaintiff is disabled in reviewing a denial of disability

benefits.  Id.; Wagner v. Sec'y of Health & Human Servs., 906

F.2d 856, 860 (2d Cir. 1990).  Rather, the court's function is

to ascertain whether the Commissioner applied the correct legal

principles in reaching his conclusion, and whether the decision

is supported by substantial evidence.  Johnson v. Bowen, 817

F.2d 983, 985 (2d Cir. 1987).  Therefore, absent legal error,

this court may not set aside the decision of the Commissioner if it is supported by substantial evidence. <u>Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir. 1982). Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. <u>Schauer v. Schweiker</u>, 675 F.2d 55, 57 (2d Cir. 1982).

The Second Circuit has defined substantial evidence as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Williams v. Bowen</u>, 859 F.2d 255, 258 (2d Cir. 1988) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)). Substantial evidence must be "more than a mere scintilla or a touch of proof here and there in the record." <u>Williams</u>, 859 F.2d at 258. The substantial evidence rule also applies to inferences and conclusions that are drawn from findings of fact. <u>Gonzales v. Apfel</u>, 23 F. Supp. 2d 179, 189 (D. Conn. 1998). The court's responsibility is to ensure that a claim has been fairly evaluated. <u>Grey v. Heckler</u>, 721 F.2d 41, 46 (2d Cir. 1983).

The Social Security Act ("SSA") establishes that benefits are payable to individuals who have a disability. 42 U.S.C. § 423(a)(1). "The term 'disability' means . . . [an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . ."

42 U.S.C. § 423(d)(1).  To determine whether a claimant is disabled within the meaning of the SSA, the ALJ must follow a five-step evaluation process as promulgated by the Commissioner.[1]

In order to be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  "[W]ork which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."  Id.[2]

---

[1]  The five steps are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him or her disabled, without considering vocational factors such as age, education, and work experience; (4) if the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant bears the burden on the first four steps. 20 C.F.R. § 416.920(a)(4)(i)—(v).

[2]  The determination of whether such work exists in the national economy is made without regard to: 1) "whether such work exists in the immediate area in which [the claimant] lives;" 2) "whether a specific job vacancy exists for [the claimant];" or 3) "whether [the claimant] would be hired if he applied for work."  42 U.S.C. § 423(d)(2)(A).

**PROCEDURAL HISTORY**

Plaintiff initially filed for disability insurance benefits under Title II Social Security Disability Insurance Benefits on September 23, 2020.  (R. 26).[3]  Plaintiff alleged a disability onset date of January 10, 2020.  Id.  Plaintiff alleged cervical radiculopathy with cervical fusion, and pseudarthrosis after fusion or arthrodesis.  (R. 701, 706).  The initial application was denied on April 7, 2021, and again upon reconsideration on April 28, 2021.  (R. 26).  Plaintiff then filed for an administrative hearing which was held by Administrative Law Judge John Aletta ("ALJ") on December 7, 2021.  (R. 43).  The ALJ issued an unfavorable decision on December 20, 2021.  (R. 36).  Plaintiff sought review by the Appeals Council, which was denied on September 28, 2022.  (R. 10).  Plaintiff then filed this action seeking judicial review.

**THE ALJ'S DECISION**

After applying the five-step evaluation process, the ALJ concluded that plaintiff was not disabled within the meaning of the Social Security Act from his alleged onset date of January 10, 2020 through the date of the ALJ's decision on December 20, 2021.  (R. 27).  At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity between his

---

[3] The Court cites pages within the administrative record as "R. __."

alleged onset date and the date of the ALJ's decision.  (R. 28).
At step two, the ALJ found that plaintiff had the following
severe impairments: degenerative disc disease of the cervical
spine and pseudoarthrosis of the cervical spine (R. 28), and the
following nonsevere impairments: coronary artery disease,
obesity, headaches and fogginess, and lumbar impairment.  (R.
29).

At step three, the ALJ found that plaintiff's severe
impairments did not meet or medically equal the severity of a
listed impairment in 20 C.F.R. Part 404, Subpt. P, App. 1 (20
C.F.R. 404.1520(d), 404.1525 and 404.1526).  (R. 30).  The ALJ
specifically considered plaintiff's spinal impairment under
Listing 1.15 pertaining to disorders of the skeletal spine but
found there was no indication of compromise of a nerve root,
radicular distribution of neurological signs present during
physical examination, or the degree of impairment related to
physical limitation considered by the listing.  Id.  The ALJ
found the record did not reflect a medical need for a walker,
bilateral canes, bilateral crutches, or a wheeled and seated
mobility device involving the use of both hands.  Id.  The ALJ
also considered the plaintiff's coronary disease under Listing
4.04 for ischemic heart disease but found that there was no
record of myocardial ischemia with (A) sign or symptom limited
exercise test, (B) three separate ischemic episodes, or (C)

coronary artery disease resulting in serious limitations
completing activities of daily living.  Id.

At step four, the ALJ found plaintiff had the residual
functional capacity

> to perform sedentary work as defined in 20 CFR 404.1567(a)
> with the following additional limitations: He can stand and
> walk for 4 hours during each 8-hour workday. He can
> frequently climb ramps and stairs; cannot climb ladders,
> ropes, or scaffolds; can frequently balance; and can
> occasionally crawl.

Id.  The ALJ then concluded plaintiff was unable to perform past
relevant work as a nurse supervisor, private duty nurse, or
general duty nurse because that past work exceeds the residual
functional capacity ("RFC").  (R. 34).

At step five, the ALJ concluded that plaintiff can transfer
his work skills to other jobs existing in significant numbers in
the national economy which he would be able to perform with his
RFC, thus finding plaintiff "not disabled."  (R. 35).


## DISCUSSION

Plaintiff argues that the ALJ erred in his evaluation of
the medical opinion evidence, in formulating plaintiff's RFC, by
finding that plaintiff's headaches did not constitute a severe
impairment at step two, and by failing to consider all of
plaintiff's impairments and limitations in the RFC and at step
five.  (Dkt. 17-1 at 1, 4-18).

I.   **The ALJ's evaluation of the medical opinions is not supported by substantial evidence.**

Plaintiff asserts that the ALJ improperly evaluated the opinions of two state agency consultants and Dr. Kruger, plaintiff's treating physician, by finding the state agency consultants' opinions persuasive and Dr. Kruger's opinions not persuasive. (Dkt. 17-1 at 4—5).

   *A. Applicable law*

For claims filed before March 27, 2017, the regulations require the application of the "treating physician rule," under which treating source opinions may receive controlling weight, provided they are not inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2).  For claims filed on or after March 27, 2017, this rule will not apply and an ALJ will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."  20 C.F.R. § 404.1520c(a).  The ALJ will consider medical opinions according to certain factors, including (1) whether objective medical evidence supports and is consistent with the opinion; (2) the relationship between the medical source and the claimant; (3)

8

the medical source's specialty; and (4) other factors that
"support or contradict a medical opinion[.]"  Id. §§
404.1520c(c)(1), 416.920c(c)(1).  The ALJ is required to explain
how he considered the "supportability" and "consistency" factors
in the evaluation, but need not explain how he considered the
secondary factors unless he finds that two or more medical
opinions regarding the same issue are equally supported and
consistent with the record but not identical.  20 C.F.R. §
404.1520c(b).

While the treating physician rule no longer applies, the
essence of the rule endures, and "the factors to be considered
in weighing the various medical opinions in a given claimant's
medical history are substantially similar."  Acosta Cuevas v.
Comm'r of Soc. Sec., No. 20-CV-0502 (AJN)(KHP), 2021 WL 363682,
at *9 (S.D.N.Y. Jan. 29, 2021).  See also Brian O. v. Comm'r of
Soc. Sec., No. 1:19-CV-983 (ATB), 2020 WL 3077009, at *4
(N.D.N.Y. June 10, 2020) ("Although the new regulations
eliminate the perceived hierarchy of medical sources, deference
to specific medical opinions, and assigning weight to a medical
opinion, the ALJ must still articulate how [he or she]
considered the medical opinions and how persuasive [he or she]
find[s] all of the medical opinions.  The two most important
factors for determining the persuasiveness of medical opinions
are consistency and supportability, which are the same factors

that formed the foundation of the treating source rule.")
(internal quotations and citations omitted).

For the "supportability" factor, "[t]he more relevant the
objective medical evidence and supporting explanations presented
by a medical source are to support his or her medical opinion(s)
or prior administrative medical finding(s), the more persuasive
the medical opinions or prior administrative medical finding(s)
will be." Id. §§ 404.1520c(c)(1), 416.920c(c)(1).  For the
"consistency" factor, "[t]he more consistent a medical
opinion(s) or prior administrative medical finding(s) is with
the evidence from other medical sources and nonmedical sources
in the claim, the more persuasive the medical opinion(s) or
prior administrative medical finding(s) will be." Id. §§
404.1520c(c)(2), 416.920c(c)(2).  Additionally, ALJs should
still consider that "[u]nder The Code of Federal Regulations,
'[a] medical source may have a better understanding of your
impairment(s) if he or she examines you than if the medical
source only reviews evidence in your folder.'" Migdalia C. v.
Kijakazi, No. 3:21-CV-00592 (RAR), 2022 WL 3368583, at *7 (D.
Conn. Aug. 16, 2022) (quoting 20 CFR §§ 404.1520c(c)(3)(v),
416.920c(c)(3)(v)).

*B. Analysis*

The ALJ found the medical opinion evidence of plaintiff's treating physician, Dr. Kruger, to be not persuasive.  The ALJ proceeded to base plaintiff's disability determination on the medical opinions of two non-examining consultants, Dr. Fine and Dr. Bridgers, neither of whom had reviewed any of the medical evidence that was produced for six months between their opinions and the ALJ's decision.  (R. 32-33).  The ALJ's determination that Dr. Kruger's opinions were not persuasive is based on certain conclusions not fully supported by the record, and the determination that Dr. Fine and Dr. Bridgers' opinions were persuasive is overly conclusory and not supported by substantial evidence.  *See* Migdalia C. v. Kijakazi, No. 3:21-CV-00592 (RAR), 2022 WL 3368583 at *6 (D. Conn. Aug. 16, 2022) (finding it "significant" where the ALJ found the opinions of two consultative doctors to be persuasive when they did not examine the plaintiff or have access to her full medical record, and yet found that the opinions of two treating doctors were unpersuasive).

> i. *The ALJ's evaluation of Dr. Kruger's medical opinion evidence.*

The ALJ found Dr. Kruger's numerous assessments of the claimant's functioning to be "not persuasive."  (R. 33).  In

support of that conclusion, the ALJ found that Dr. Kruger failed
to explain the basis for the limitations in his opinions, and
that the limitations were not supported by his treatment
records.  Id.  In some of Dr. Kruger's opinions, Dr. Kruger
asserts that plaintiff is "disabled." (R. 1769, 1788).
Defendant correctly notes that the determination of whether
plaintiff is disabled is an issue reserved for the Commissioner,
and Dr. Kruger's opinions stating plaintiff is disabled are not
valuable or persuasive.  (20 C.F.R. § 404.1520b(c)(1)-(3)).
However, this conclusion does not automatically undermine Dr.
Kruger's other opinions regarding plaintiff's limitations.  The
ALJ's finding that Dr. Kruger's other opinions, which contain
functional limitations of plaintiff's abilities, are not
entitled to persuasive weight must be supported by substantial
evidence.  These opinions include a June 22, 2021 evaluation in
which Dr. Kruger stated plaintiff may be able to work no more
than three hours a day, must be free to sit or stand as needed
and take frequent breaks, and must avoid activities requiring
neck flexion, extension, or rotation.  (R. 1740).  Dr. Kruger
reaffirmed these findings in a July 13, 2021 evaluation finding
that plaintiff can sit, stand or walk no more than three hours
in an eight hour work day, must be free to sit or stand as
needed, cannot lift or carry any weight, can frequently grasp
things in either hand or use his fingers for fine manipulation,

and has no useful ability to climb, crouch, crawl, among other things.  (R. 1689).  Additionally, Dr. Kruger opined that plaintiff would likely be absent from work four days a month on average. Id.

In finding Dr. Kruger's opinions not persuasive, the ALJ cited Dr. Kruger's treatment notes showing "a non-focal neurological examination with intact or full strength, sensation, and reflexes in the upper extremities."  (R. 33).  Assuming these treatment notes indicate that plaintiff has good grip strength, sensation in his body, and reflexes in his arms, it is not clear and the ALJ does not make it clear how this contradicts Dr. Kruger's opinion that plaintiff has chronic pain coupled with a limited range of motion in his spine and neck, especially considering that plaintiff consistently reported pain and difficulty with movement.  (R. 1690, 1727, 1788).  Much of the medical evidence does not undermine Dr. Kruger's opinion, including treatment notes from Dr. Kruger's visits showing abnormal findings.  *See* (R. 1768) (x-ray results showing "cervical kyphosis").  Dr. Kruger's evaluations also consistently reflect plaintiff's complaints of pain, stiffness, and limited range of motion in his neck, shoulders, and back.  *See* (R. 1438) (January 21, 2021 note from Dr. Kruger stating that plaintiff "has significant pain and stiffness"); (R. 1439-40) (February 9, 2021 note from Dr. Kruger stating that plaintiff continues to

have neck pain, neck and upper back stiffness, and "feels the progress may have slowed"); (R. 1769) (June 27, 2021 note by Dr. Kruger stating plaintiff has "marked limitation of motion, ongoing neck pain and radiculopathy").  These reports are corroborated by other medical providers who treated or worked with plaintiff during the relevant period.  *See* (R. 1681) (December 11, 2020 physical therapy note that cervical range of motion "will be a challenge to regain"); (R. 1647) (January 25, 2021 physical therapy note that plaintiff continues to present with range of motion deficits in his cervical spine and persistent symptoms impairing ability to stay in any position for long period, do more than "light" chores, read, drive, and sleep); (R. 1592) (April 23, 2021 physical therapy evaluation finding plaintiff "continues to present with significant [active range of motion deficits]" and spasms).  While plaintiff would sometimes report "subjective improvement" between physical therapy sessions, other times he would present with more acute symptoms.  (R. 1665) (physical therapy note from January 4, 2021).  *See also* (R, 1649) (physical therapy note from January 25, 2021 reporting plaintiff "[h]aving some good days, but more often bad days, through the course of the week"); (R. 1639) (physical therapy note from February 8, 2021 where plaintiff reported feeling "okay over the weekend" but woke up that morning with significantly increased stiffness).

The ALJ also pointed to three activities as being inconsistent with Dr. Kruger's opinion of plaintiff's limitations.  These activities come from a May 2021 note from Dr. Kruger that "indicates the claimant performed light chores and snow shoveling," and an October 2021 note co-signed by Dr. Kruger that indicates the claimant walked 2-3 miles daily.  (R. 33, 1715, 1793).  First, Dr. Kruger's reference to light chores was as follows: "He is try to do [sic] some light chores around the house.  This should be encouraged.  Unfortunately this has been quite unsuccessful resulting in significant increase of his already meaningful baseline pain."  (R. 1715).  The only other indication of chores in the record is from plaintiff's testimony, where he states that while his brother does most of his cooking, he can heat food up, does "[m]inor sweeping," can carry a bag or two into the house and can grocery shop for "very few items."  (R. 66-67).  These indications of household chores are relatively limited, and the ALJ does not clarify how these indications fully undermine Dr. Kruger's limitations regarding ability to sit, stand, walk, and plaintiff's need for frequent breaks.  Second, the reference to snow shoveling is Dr. Kruger's note that plaintiff "[a]pparently was seen shoveling some snow" which had raised a question by his compensation carrier and resulted in a termination of his physical therapy benefits.  (R. 1715).  The reference to snow shoveling does not indicate that

plaintiff can shovel snow, or that he actually shoveled snow. In fact, Dr. Kruger makes a note that it is "not reasonable to believe that [plaintiff] can shovel snow." (R. 95). Third, the ALJ points to an indication that plaintiff walks 2-3 miles daily as undermining Dr. Kruger's opinions. (R. 33). The report of plaintiff's walking was made by Dr. Kruger on September 14, 2021. (R. 1793). The other references to plaintiff's ability to walk include Dr. Kruger encouraging plaintiff to take "[f]requent short walks" (R. 89), that in January 2022, plaintiff had not yet met the physical therapy goal of walking for exercise for 20-30 minutes without pain (R. 105), and plaintiff's testimony that he could walk only about a quarter of a mile at once (R. 68). This evidence aligns with Dr. Kruger's various opinions which aver that plaintiff can walk no more than 3 hours in a day, must be free to sit or stand as needed and needs the ability to take frequent breaks. (R. 1689, 1727).

"An ALJ may not 'cherry pick' medical evidence in the record to support his decision while arbitrarily assigning weight to others." Arlene P. v. Kijakazi, No. 3:21-cv-00895 (SRU), 2022 WL 16734548, at *4 (D. Conn. Sept. 7, 2022), report and recommendation adopted, No. 3:21-CV-00895 (SRU), 2022 WL 5119867 (D. Conn. Oct. 5, 2022) (quoting Artinian v. Berryhill, 2018 WL 401186, at *8 (E.D.N.Y. Jan. 12, 2020)). The references to snow shoveling, light chores, and walking should not be taken out of

the context of the record to undermine the opinions of
plaintiff's treating physician when most of the evidence in the
record does not do so.

### ii. *The ALJ's evaluation of Dr. Fine and Dr. Bridgers' medical opinion evidence.*

The ALJ's determination that the non-examining consultative
doctors' opinions were supported by and consistent with the
record was overly conclusory.  The ALJ's opinion does not
contain substantive analysis of the supportability and
consistency factors with respect to the consultative doctors'
opinions.

For the supportability factor, the ALJ's analysis for both
physicians' opinions is, in its entirety: "[t]hey are supported
by narrative explanation."  (R. 32).  This, without more, is
insufficient.  Additionally, no such narrative explanation
exists in either Dr. Bridgers or Dr. Fine's evaluations, where
the "discussion" sections of their opinions simply summarize the
opinions of Dr. Kruger and Dr. Wakefield, then state that
plaintiff, despite "post op[eration] progress…appears to be only
capable of the above outlined work related activities."  (R.
701, 710).

The ALJ's analysis of the consistency factor for the
consultative doctors' opinions is more robust, where he states

that "additional evidence from the hearing level is not
consistent with the claimant being more limited" and notes that
the evidence "continues to show examination results for intact
sensation, 5/5 strength, and normal gait," and that the
"claimant reported walking 2-3 miles per day."  (R. 32-33).
However, is not clear how intact sensation in extremities,
strength, and normal gait is evidence of ability to walk or
stand for four hours out of an eight-hour workday, and the ALJ
does not bridge that gap in his opinion.  Additionally, when
viewed in context of the record, the plaintiff's report of
walking is not entirely consistent with the conclusion that
plaintiff can stand or walk for four hours in an eight-hour work
day.  As discussed above, on September 14, 2021, Dr. Kruger
noted plaintiff reported was walking 2-3 miles per day.  (R.
1793).  The other references to plaintiff's ability to walk
include Dr. Kruger's encouraging plaintiff to take "[f]requent
short walks" (R. 89), that in January 2022, plaintiff had not
yet met the physical therapy goal of walking for exercise for
20-30 minutes without pain (R. 105), and plaintiff's testimony
that he could walk only about a quarter of a mile at once (R.
68).  Neither the consultative doctors' opinions nor the ALJ's
opinion make it clear how the reports of plaintiff's walking,
when viewed in context of the record, suggest plaintiff can
stand or walk for four hours in an eight-hour workday.  Dr.

Bridgers and Dr. Fine's conclusions are especially confusing considering that their opinions were given prior to plaintiff's report that he was walking 2-3 miles per day.

When analyzing medical opinion evidence, an ALJ must *both* identify evidence that supports his conclusion and "build an accurate and logical bridge from [that] evidence to his conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)).  Remand may be appropriate where an ALJ's conclusory statements regarding supportability "offer no insight into 'how well [either doctor] supported and explained their opinion.'" Ayala v. Kijakazi, 620 F. Supp. 3d 6, 31 (S.D.N.Y. 2022) (quoting Vellone v. Saul, No. 120CV00261RAKHP, 2021 WL 319354 (S.D.N.Y. Jan. 29, 2021), report and recommendation adopted sub nom. Vellone on behalf of Vellone v. Saul, No. 20-CV-261 (RA), 2021 WL 2801138, at *6 (S.D.N.Y. July 6, 2021)).  Here, the ALJ does not sufficiently connect the evidence regarding plaintiff's sensation, strength, gait, and walking abilities with his determination that plaintiff can stand or walk for 4 hours in a workday.  The conclusory nature of the ALJ's evaluation of the supportability and consistency factors justifies remand, especially considering that these two opinions are the only opinions which the ALJ found persuasive.

Even if the ALJ's lack of analysis was not sufficient to justify remand, the consultative doctors' opinions themselves raise a question regarding whether the ALJ's assignment of persuasive weight is supported by substantial evidence. The one sentence of discussion contained in both consultative doctors' opinions states that the limitations they outline in their opinions are "per [plaintiff's] physician." (R. 701, 710). This sentence comes after the consultative doctors summarize two of plaintiff's recent doctor's appointments—one with Dr. Kruger and one with Dr. Wakefield. Id. While it is not clear which physician Dr. Fine and Dr. Bridgers are referring to in this note, it is likely that they are referring to Dr. Kruger, considering he is plaintiff's primary physician dealing with his cervical spine issue. It appears less likely that Dr. Fine and Dr. Bridgers were referring to Dr. Wakefield, who performed a Respondent Medical Examination which was "for evaluation only" and where "[n]o patient-physician relationship was established." (R. 1406).

Assuming the consultative doctors' opinions refer to Dr. Kruger, they likely refer to a note made during a March 9, 2021 appointment because that appointment was summarized immediately preceding the sentence stating the outlined limitations were "per [plaintiff's] physician." (R. 701, 710). If so, their opinions may mischaracterize Dr. Kruger's assessment from that

appointment.  Dr. Kruger's statement on March 9, 2021 was that
plaintiff had "not recovered enough to attempt light duty
employment."  (R. 1427).  Dr. Kruger also noted that plaintiff
had had "little change" since an appointment with Dr. Kruger on
February 9, 2021.  (R. 1427).  Shortly after that appointment,
Dr. Kruger opined that plaintiff was "unable to return to light
duty or sedentary work," had "significant pain and stiffness,"
but was hopeful that plaintiff would be able to "return to
highly restricted sedentary employment" around July 2021.  (R.
1429) (note signed by Dr. Kruger on February 12, 2021).  In
contrast, Dr. Bridgers and Dr. Fine's outlined limitations found
plaintiff can stand or walk for four hours in an eight hour
workday, can sit for six hours in an eight hour workday, can
frequently climb ramps and stairs, can frequently balance, can
occasionally climb ladders, ropes, and scaffolds, and has
unlimited ability to stoop, kneel, crouch, and crawl. (R. 701,
709).  These limitations are clearly not aligned with Dr.
Kruger's assessment despite stating that the limitations were
"per [plaintiff's] physician."  (R. 701, 710).[4]

---

[4] Alternatively, Dr. Bridgers and Dr. Fine's opinions could refer to
Dr. Wakefield, and in particular, an evaluation conducted by Dr.
Wakefield on February 11, 2021.  (R. 698, 701) (Dr. Fine report
summarizing plaintiff's appointment with Dr. Wakefield on February 11,
2021); (R. 710) (Dr. Bridgers opinion summarizing plaintiff's
appointment with Dr. Wakefield on February 11, 2021).   As part of
that evaluation, Dr. Wakefield stated that plaintiff can "continue
working in his capacity as a registered nurse."  (R. 1414).  However,
at the time plaintiff was evaluated by Dr. Wakefield, he had not

The ALJ's decision does not engage with or acknowledge this discrepancy.  This is especially concerning considering that the discrepancy arises in the only sentence of discussion contained in the consultative opinions, and the two opinions are the only opinions which the ALJ assigned persuasive weight.  This confusion and lack of engagement leads the Court to conclude that the assignment of persuasive weight to the consultative doctors' opinions is not supported by substantial evidence.

The record supports plaintiff's argument that the ALJ erred in finding Dr. Kruger's opinion unpersuasive and relying almost entirely on the non-examining consultative doctors' opinions in formulating plaintiff's RFC.

## II.    Remaining arguments

Plaintiff also argues that the ALJ erred in formulating plaintiff's RFC based only on the medical opinions of Dr. Fine and Dr. Bridgers, by finding that plaintiff's headaches did not constitute a severe impairment at step two, and by failing to consider all of plaintiff's impairments and limitations in the RFC and step five.  Because the Court has found that the ALJ

---

worked as a registered nurse for over a year.  (R. 28).  If the "physician" to whom Dr. Bridgers and Dr. Fine's opinions refer is Dr. Wakefield, their assessment of plaintiff's residual functional capacity may have been based on a misunderstanding regarding plaintiff's work activities at the time Dr. Wakefield's opinion was given.

erred in his evaluation of the medical opinion evidence, it need not reach the merits of plaintiff's remaining arguments. Therefore, this matter is remanded to the Commissioner for further administrative proceedings consistent with this Ruling. On remand the Commissioner will address the other claims of error not discussed herein.

Finally, the Court offers no opinion on whether the ALJ should or will find plaintiff disabled on remand.  Rather the Court finds remand is appropriate to permit the ALJ to reweigh the medical opinion evidence in determining the plaintiff's RFC.

**CONCLUSION**

Plaintiff's motion for an order reversing or remanding the Commissioner's decision (Dkt. 17) is GRANTED and the Commissioner's motion to affirm that decision (Dkt. 21) is DENIED.

It is so ordered this 14th day of December 2023, at Hartford, Connecticut.

_____

Robert A. Richardson

Magistrate Judge